UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SANDRA D. LEONARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:18-cv-00079-JAR |
| ) | |
| ANDREW M. SAUL, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Sandra D. Leonard's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

**I. Background**

On February 9, 2016, Leonard protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging disability beginning January 22, 2016, due to chronic obstructive pulmonary disease ("COPD"), past leg fracture, gastrointestinal trouble, type 2 diabetes, and carpal tunnel syndrome in both wrists. (Tr. 145-148, 172.) Leonard's application was denied on March 31, 2016. (Tr. 13.) Leonard requested and was granted a hearing before an administrative law judge ("ALJ"), which took place on October 24, 2017. (*Id.*) Leonard was represented by non-attorney representative Tiffany Beardslee. (*Id.*)

1

At the hearing, the ALJ heard evidence from both Leonard and an impartial vocational expert. (*Id.*) Leonard testified that, in addition to the disabilities she listed on her application, she also suffered from debilitating back pain caused by degenerative disk disease. (Doc. 11 at 2-5.) Leonard testified that she experienced daily pain rated as a nine out of ten. (Tr. 41.) The record contained a 2015 MRI that indicated "some disc bulges and arthritis" in Leonard's lower back and she further testified that over-the-counter treatments, chiropractic services, and physical therapy had not brought relief. (Tr. 41-42.)

> While Beardslee was questioning Leonard about her back pain, the ALJ interjected:
>
> ALJ: Hold on. Ms. Beardlsee, I'm looking at the filing, nothing about the back. I looked in the record, I didn't see anything about the back. Is there a back impairment here, and if so, where in the record do we have a diagnosis of some kind of a back [impairment]? I don't see an X-ray. Did I miss it?
>
> REP: Exhibit 4F, page 199, there's a lumbar spine MRI.
>
> . . .
>
> ALJ: Okay, but was there a—it says mild degenerative disc disease—
>
> REP: And the disc bulges.
>
> ALJ: Right, but was there a diagnosis?
>
> . . .
>
> REP: I'm looking—it says—it has history was low back pain and bilateral lower extremity pain with a history of fall in March 2015.
>
> ALJ: Right. But this, this MRI was taken in June of 2015, about six months before she stopped working . . . . She just testified her pain is a level nine, nine and a half . . . . I don't know how we can have that level pain and work for six months. . . . [A]nd then when she filed, she didn't even write [back impairment] as a problem.
>
> REP: Okay. Well, we'll move on.

(Tr. 42-43.) Beardslee then began asking Leonard about her diabetes. (Tr. 42.)

The ALJ issued a written decision denying Leonard's application on February 1, 2018. On July 10, 2018, the Appeals Council of the Social Security Administration denied Leonard's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

Leonard filed this appeal on September 1, 2018. (Doc. 1.) The Commissioner filed an Answer. (Doc. 9.) Thereafter, Leonard filed a Brief in Support of her Complaint (Doc. 11), and the Commissioner filed a Brief in Support of the Answer (Doc. 26).

## II. Facts

The Court adopts the facts as stated in the certified agency record (*see* Doc. 11-1), and as supplemented by Leonard's brief response. (Docs. 11, 17.) The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id*.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the

claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id*.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id*. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Andrews v. Colvin*, 791 F.3d 978, 983 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

 (1) The findings of credibility made by the ALJ;

5

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. Decision of the ALJ

The ALJ determined that Leonard suffered from COPD, history of right fibula fracture, type 2 diabetes, and obesity—all severe impairments—but determined that the record did not support a finding of sufficiently severe impairment caused by a number of other conditions mentioned in Leonard's medical history. (Tr. 15-17.) The ALJ specifically determined that while "[t]here was some evidence of mild degenerative disc disease at multiple level and left lateral/far left disc bulges, . . . the claimant did not allege a spinal impairment . . . [and t]here is no evidence that this condition interferes with the claimant's ability to work. I find it non-severe." (Tr. 16.)

The ALJ found that Leonard had a residual functional capacity ("RFC") to perform sedentary work, without climbing ropes, ladders, or scaffolds, and limited to only occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling. (*Id.*) In addition, the ALJ found that Leonard required a climate-controlled worksite and could not be exposed to pulmonary irritants. (*Id.*) The ALJ also found that Leonard's RFC leaves her capable of performing past relevant work as a customer service representative, which she did from June 2014 to January 2016. (Tr. 21.)

Ultimately, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Leonard can perform, citing Social Security Medical-Vocational Rule 201.28, 20 C.F.R. Pt. 404, Subpt. P, App. 2. (Tr. 22.) The ALJ therefore concluded that Leonard had not been under a disability from January 22, 2016—the alleged onset date—through the date of her decision, February 1, 2018. (*Id.*)

## V. Discussion

Leonard argues that the ALJ's interjection during Beardslee's questioning prevented Leonard from "present[ing] evidence at hearing of how she is impacted adversely by her medically documented back impairment." (Doc. 11 at 2.) In addition, Leonard argues that the ALJ's questioning "misled Ms. Leonard and her non-lawyer representative by claiming without support that the back impairment was precluded by failure to allege it when she made her initial application." (*Id.* at 6.) Leonard asserts that because she was unable to fully develop the evidence surrounding the effects of her debilitating back pain, the ALJ wrongly determined that her back impairment was non-severe, leading to an RFC that "is the result of reversible errors of law." (*Id.*)

Defendant argues that the burden to establish impairment rests on the claimant and that therefore any detrimental failure to fully develop the record must be borne by the claimant. (Doc. 16 at 4-5.) To that end, Defendant implies that claimant is bound by Beardslee's decision to move on instead of answering the ALJ's questions. (*Id.* at 7.) Defendant also argues that Leonard was able to present substantial evidence regarding her back pain, both through medical records and by testifying at the hearing, and that the ALJ considered that evidence in crafting her RFC. (*Id.* at 5-6.) Defendant argues that there is substantial evidence to support the ALJ's finding that Leonard's back impairment was not severe and to discount her subjective complaints. (*Id.* at 6.) Lastly, Defendant asserts that the failure to list an impairment on an

7

initial application, while not disqualifying, is appropriately considered as part of the record as a whole. (*Id*. at 5.)

The Court concludes that the ALJ's decision was supported by substantial evidence. As an initial matter, Defendant is correct that the burden to prove disability remains with the claimant. *Brantley*, 2013 WL 4007441, at *3. The ALJ's questioning did not relieve Leonard of that burden, and if Beardslee's decision to move on negatively impacted her ability to prove disability, that is not error on the part of the ALJ.

Likewise, while Leonard is correct that the failure to list an impairment on her initial application does not bar her from presenting evidence of that impairment in support of her disability, it is a "significant" fact that the ALJ may consider. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). That Beardslee allegedly understood the ALJ's reference to the absence of back pain on Leonard's initial application to mean that back pain could not be raised, that misunderstanding is attributable to Beardslee and does not undermine the soundness of the ALJ's disability determination. To the contrary, the ALJ makes a single reference to the initial application, at the very beginning of her interjection—"Hold on. Hold on. Ms. Beardslee, I'm looking at *the filing*, nothing about the back." (Tr. at 42 (emphasis added))—before asking Beardslee to explain the evidentiary basis for Leonard's complaints of back pain (*Id*. at 42-43). The record reflects that the ALJ's inquiry supports a conclusion that the ALJ was willing to consider the condition despite its absence from the application, and it certainly cannot be said to have "directly misled" anyone to believe that such evidence was "precluded." (*See* Doc. 11 at 6.)

Further, the Court is not persuaded by Leonard's argument that the ALJ's inquiries ran afoul of her duty to fully develop the record. *See Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record

fairly and fully, independent of the claimant's burden to press his case.") Again, the transcript indicates the opposite: the ALJ was in the process of developing the record when Beardslee decided to abandon Leonard's claims of back pain. In any event, the ALJ fully considered the evidence of Leonard's back issues: Leonard's failure to list back pain on multiple filings with the Administration (Tr. 172, 196-202); MRI results noting no herniation or stenosis and only mild degenerative disc disease (Tr. 395, 545); records of Leonard's mobility and lack of pain during other medical examinations and treatments (Tr. 256-58, 261, 276, 434-35, 447-48, 626); and Leonard's own testimony regarding back pain and her attempts to treat it (Tr. 41-42). The ALJ noted that while the evidence indicates the existence of a painful back condition, "[t]here is no evidence that the condition interferes with [Leonard's] ability to work." (Tr. at 16.) Accordingly, the ALJ determined that the condition was not a severe impairment. The Court finds substantial support in the record for that determination.

Leonard cites *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009), for the proposition that an ALJ commits reversible error when she rejects documented medical evidence that shows impairment. (Doc. 11 at 9.) Specifically, Leonard argues that the ALJ rejected "imaging of back impairment and the expert interpretation of that imaging," thereby "imped[ing] Ms. Leonard from carrying her burden of proof." (*Id*. at 10.) The Court does not believe *Pate-Fires* is analogous to this case. As noted above, the record indicates that the ALJ did consider the medical evidence, and she expressly cited the MRI report in her decision. (Tr. 16 (citing Exh. 4F at 199), 545.) Moreover, in *Pate-Fires*, "the clear weight of the evidence fully support[ed] a determination [that] Pate-Fires is disabled." 564 F.3d at 947. That simply is not true in this case, where Leonard failed to allege spinal impairment and numerous medical records indicate that she was not experiencing debilitating back pain.

9

## VI. Conclusion

Having found that the ALJ's interjection was not improper and did not prevent Leonard from arguing that her back pain contributed to her disability, and finding that there was substantial evidence in the record to support the ALJ's determination that Leonard is not disabled, the Court will affirm the ALJ's determination.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Leonard's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 20th day of September, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE